1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERESA REGINA HUNTER,                    No.  2:23-cv-01646-CKD (SS)

12              Plaintiff,

13        v.                                  ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II

20   of the Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to

21   conduct all proceedings in the case, including the entry of final judgment.  For the reasons

22   discussed below, the court will deny plaintiff's motion for summary judgment and grant the

23   Commissioner's cross-motion for summary judgment.

24   BACKGROUND

25        Plaintiff, born in 1973, applied on February 13, 2021 for DIB, alleging disability

26   beginning January 1, 2019.  Administrative Transcript ("AT") 10, 24.  The ALJ determined that,

27   due to the December 16, 2019 denial of plaintiff's earlier DIB application, the potential onset date

28   could be no earlier than December 17, 2019.  AT 10.  Plaintiff alleged she was unable to work

                                         1

due to sleep apnea disorder, artherosclerosis of the aorta, partial paralysis of one vocal cord, voice disorder dysphonia, chronic low back pain, anemia, hypertension (high blood pressure), cardiomyopathy, primary (heart condition), and muscle spasm of the back.  AT 78-79.  In a decision dated July 7, 2022, the ALJ determined that plaintiff was not disabled.[1]  AT 10-26.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 17, 2019, the potential onset date.
>
> 3.    The claimant has the following severe impairments: cardiomyopathy, obesity, degenerative disc disease of the lumbar

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

spine, obstructive sleep apnea, and hypertension.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work in that she can lift and carry ten pounds frequently and occasionally, sit for six hours of an eight-hour day, and stand and walk for two hours of an eight-hour day, except she can only occasionally balance, climb, crouch, crawl, kneel and stoop but never climb ladders, ropes, and scaffolds. She must use a cane for prolonged ambulation on uneven terrain. She must avoid concentrated exposure to extreme cold, heat, vibrations, fumes, odors, dust, gases, poor ventilation, etc., and avoid even moderate exposure to unprotected heights, moving mechanical parts.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1973] and was 46 years old, which is defined as a younger individual age 45-49, on the potential disability onset date.

8. The claimant has at least a high-school education.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2]

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2019, through the date of this decision.

AT 13-25.

ISSUES PRESENTED

    Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to fully develop the record; (2) the ALJ erred in discounting plaintiff's subjective statements: and (3) the ALJ's determined residual functional capacity (RFC) erroneously failed to account for obesity and mental impairments.

/////

---

[2] Relying on vocational expert (VE) testimony, the ALJ found that plaintiff could perform sedentary unskilled jobs such as call out operator, order clerk, and touch up screener. AT 25.

3

1   LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is based on

3   proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4   as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5   evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6   F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7   mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

9   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13         The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18  administrative findings, or if there is conflicting evidence supporting a finding of either disability

19  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22  ANALYSIS

23         A.  Duty to Develop

24         Plaintiff argues that the ALJ erred by failing to order an x-ray of her right knee, despite a

25  consultative examiner's statement that such an x-ray "may be helpful."

26         At the end of the March 22, 2022, hearing the ALJ ordered a "consultative medical

27  examination to address your physical problems including the ability for prolonged sitting."  AT

28  59.  On May 12, 2022, Dr. Shahid Ali conducted an internal medicine consultative exam of

4

plaintiff.  AT 1251-1254.  Dr. Ali diagnosed plaintiff with low back pain, arthritis, and obesity, noting in part that plaintiff had "tenderness on deep palpation on the right knee on the medial side," "extensive soft tissue around her knee," and "crepitus in her knees. She was not able to do toe or heel walk.  <u>X-ray of right knee may be helpful.</u>"  AT 1253 (emphasis added).  Dr. Ali opined that plaintiff could perform light exertional work.  AT 1254.

The ALJ found Dr. Ali's findings partially persuasive, but determined that plaintiff could only perform sedentary work, citing the "longitudinal record of care . . . demonstrat[ing] a combination of severe impairments necessitating significant medical monitoring, evaluation and treatment supporting her subjective allegations of limits on sitting, standing and walking, as well as lifting and carrying."  AT 23.  The ALJ noted the record of "spinal findings of tenderness and at times positive straight leg raise or decrease range of motion . . . [and] moderate decrease in left ventricular function[.]"  AT 23.  While the ALJ accepted Dr. Ali's finding that plaintiff had "significant capacity to engage in working tasks," he determined plaintiff's RFC to be more limited than Dr. Ali's opined RFC for light work.  AT 23; <u>see also</u> AT 22 ("accommodations are made for her chronic symptoms of her multiple impairments," limiting plaintiff to sedentary work).

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459–60 (9th Cir. 2001); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  <u>McLeod v. Astrue</u>, 640 F.3d 881, 885 (9th Cir. 2011).

Plaintiff argues that Dr. Ali's note that an x-ray of the right knee "may be helpful" shows that the record was inadequate, triggering the duty to develop.  However, plaintiff has not shown that this alleged error was harmful, given that the ALJ found plaintiff limited to sedentary work, even without a right knee x-ray.  The ALJ developed the record by ordering a post-hearing consultative exam to assess plaintiff's physical limitations, and then proceeded to find plaintiff more physically limited than the consultative examiner did.  Plaintiff has not shown harmful error

on this basis.

B. Subjective Statements

Plaintiff asserts that the ALJ erred in discounting plaintiff's subjective symptom testimony, as he "did not actually explain how the objective medical evidence was not consistent with plaintiff's allegations of pain and dysfunction." (ECF No. 14 at 17.)

The ALJ summarized plaintiff's allegations as follows:

> The claimant alleges a combination of impairments causing weakness, fatigue and chronic pain[.] [She] alleges severe back pain when standing, walking, and sitting. She also has shortness of breath because of her weight, and abnormal heart. She can walk about 30-40 feet and then feels severe back pain and shortness of breath. She has back pain and shortness of breath while dressing. She cannot stand longer than three minutes, needs to rest her back throughout the day, and her heart functioning is at 35%. She uses a cane or other support, a grocery cart, or counter. She has trouble sleeping due to sleep apnea, but is not using a CPAP machine. She gets dizziness upon arising from a chair, about 15 seconds a couple of times a day. She states she is unable to work due to the functional limitations caused by her impairments. The claimant has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing, due to the symptoms of her impairments and chronic pain.

AT 16; see AT 35-54 (hearing testimony). The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the objective medical and other evidence for the reasons explained in this decision." AT 17.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider

6

1    objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

2    344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

3    then may consider the nature of the symptoms alleged, including aggravating factors, medication,

4    treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

5    applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

6    testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

7    prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

8    1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

9    01; SSR 88-13.  When discounting subjective testimony, an ALJ must provide "specific, clear,

10   and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021)

11   (emphasis in original), citing Lambert, 980 F.3d at 1277–78.  This standard does "not require

12   ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"  Lambert, 980 F.3d at

13   1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a

14   nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical

15   treatment—is not enough to satisfy the minimal requirements for assessing credibility.  Id. at

16   1277–78.

17        Here, the ALJ found objective medical evidence of impairment, with severe impairments

18   of cardiac issues, degenerative disc disease, obstructive sleep apnea, and hypertension.  AT 14.

19   The ALJ set forth a summary of the medical evidence during the relevant period, noting that

20   plaintiff had reported chronic low back pain and been assessed as severely obese since 2011,

21   worsening in 2019.  AT 17.  The ALJ noted that a January 2020 exam "showed limited findings

22   of abnormalities," including normal motor strength, sensation, deep reflexes, and gait.  AT 18.  In

23   February 2021, the ALJ noted, a cardiology exam showed ejection fraction of 35% and a

24   moderately decreased left ventricular function and normal right ventricle size and function, with

25   largely normal exam findings.  AT 19-20.  Plaintiff continued to report low back pain in 2021 and

26   underwent a consultative exam by Dr. Ali in May 2022.  AT 20-21.

27        After chronologically summarizing the medical evidence, the ALJ discussed for several

28   paragraphs why he believed the longitudinal record did not entirely support plaintiff's subjective

symptom allegations, although he credited them to some degree, limiting her to sedentary work. AT 21-22, AT 23 (finding that the longitudinal record of care "support[ed] her subjective allegations of limits on sitting, standing, and walking, as well as lifting and carrying").  First, the ALJ noted that the objective findings and exams showed only "normal to mild abnormalities" and "moderate decrease in left ventricular function," such that plaintiff's alleged limitations were "greater than expected."  AT 21.  The lack of objective findings was a proper factor to consider in assessing plaintiff's statements about her disabling physical limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility finding where the "claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence").

The ALJ next found that plaintiff failed to follow a prescribed course of treatment in several instances, a proper factor to consider in evaluating credibility.  AT 21; see Smolen, 80 F.3d at 1284.  The ALJ noted that, while plaintiff was "generally compliant with treatment recommendations," there was "evidence of lack of follow-through with physical therapy, home exercise programs, recommended weight loss efforts, specialist evaluations, usage of her CPAP unit and renewed sleep study."  AT 21; see AT 18 (citing October 2019 note that "she had missed physical therapy multiple times, missed pain clinic follow-up" and did not do home exercises learned in physical therapy; February 2020 note that she "did not follow-up with pain clinic referral she had been given; she asked for disability"), AT 19 (citing January 2021 note that she did not use her CPAP device or follow up on sleep study), AT 20 (citing April 2021 note that she was not using CPAP device; August 2021 note that she was not doing exercises prescribed for chronic back pain and spasms).  The ALJ found that this evidence "challenge[d] the claimant's allegations of symptoms and limitations."  AT 21.

The ALJ next found that, contrary to her testimony of disabling limitations, plaintiff's activities of daily living showed "good control of symptoms and conditions."  AT 21.  He noted that "[s]he is substantially independent in self-care, can perform light household chores, go out alone, drive, and shop twice-weekly.  She cares for and is raising her 14-year-old son . . . She

1    reported doing yard work to treating providers."  AT 21; see AT 35, 43-45 (hearing testimony).

2    The extent to which an applicant can perform daily activities is also a proper factor to consider in

3    the credibility analysis.  Smolen, 80 F.3d at 1284.  The ALJ also noted that plaintiff's severe

4    impairments were longstanding and she had been "treated for them for many years" (AT 22);

5    however, plaintiff worked at least part-time (and with accommodations for sitting at her cashier

6    job) until March 2022.  See AT 36-37, 39 (hearing testimony).  The ALJ found that "[t]his

7    evidence does not fully support the functional limitations alleged by the claimant."  AT 22.

8         Because the ALJ used the proper process and provided proper reasons, including

9    sufficiently explaining why specific evidence undermined plaintiff's allegations to some degree,

10   the undersigned defers to his credibility finding.

11        C.  Residual functional Capacity

12        Lastly, plaintiff asserts that ALJ erroneously failed to account for obesity and mental

13   impairments in the RFC, which limits her to sedentary work and includes no mental limitations.

14        Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for

15   assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person

16   "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003);

17   see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity

18   reflects current "physical and mental capabilities").  RFC is assessed based on the relevant

19   evidence in the case record, including the medical history, medical source statements, and

20   subjective descriptions and observations made by the claimant, family, neighbors, friends, or

21   other persons.  20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).  When assessing RFC, the ALJ must

22   consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

23   work[.]"  20 C.F.R. §§ 404.1545(a)(4).

24        Plaintiff argues that the ALJ failed to account for the effect of her morbid obesity on her

25   ability to perform sustained work.  The ALJ found obesity a severe impairment and noted that

26   plaintiff had been assessed with morbid or severe obesity since 2011, worsening in 2019.  AT 17.

27   He noted that her weight was "fairly consistent, between 332-335 pounds between October 2020

28   through March 2021" and that she was advised her chronic back pain and spasms "would worsen

9

without significant weight loss." AT 20.  The ALJ noted that her May 2022 exam findings were largely "normal but for being obese," among other issues.  AT 21.  He further noted evidence that plaintiff was not compliant with recommended weight loss efforts.  AT 21.  In assessing her RFC, the ALJ reasoned that plaintiff's severe impairments, including obesity, had been assessed for many years, including prior to the alleged onset date of December 16, 2019.  AT 22.  However, he factored these impairments into an RFC for sedentary work with additional limitations.  AT 22.  Aside from her own statements, found to be less than fully credible, plaintiff has not pointed to evidence showing her obesity-related limitations are greater than those set forth in the RFC.

Plaintiff also argues that the ALJ erred in failing to incorporate mental limitations into the RFC.  Notably, in applying for disability benefits, plaintiff did not claim any mental impairments.  See AT 78-79, 233.  At the March 2022 hearing, plaintiff testified about physical symptoms and limitations, after which the ALJ asked if there were "any other problems that's preventing you from working that we haven't talked about that you want to bring to my attention?"  AT 49.  Plaintiff answered: "No."  AT 49.

However, in summarizing plaintiff's symptom allegations, the ALJ noted that plaintiff alleged limitations in "the capacity to understand remember or apply information as well as maintain concentration, persistence and pace."  Plaintiff contends that the ALJ should have discussed plaintiff's mental symptoms and made an explicit finding whether they constituted medically determinable impairments.  ECF No. 19 at 4.

When a claimant has presented a "colorable claim" of mental impairment, the ALJ is required "to follow a special psychiatric review technique."  Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725-26 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a).  In performing the technique, the ALJ rates the degree of functional limitation for four functional areas and determines whether the impairment is severe.  Keyser, 648 F.3d at 725; 20 C.F.R. § 404.1520a.  In Zink v. Berryhill, 2018 WL 7142096, *8 (N.D. Cal. Dec. 11, 2018), the court found that plaintiff had no "colorable claim" of mental impairment where she did not list mental impairments in her initial disability report, testified mainly about physical limitations, and "did not present any medical evidence from an acceptable medical source that she was suffering from anxiety or depression during the

alleged disability period."  Similarly, here, plaintiff's application for disability benefits and hearing testimony concerned physical symptoms only, and there is little evidence of mental symptoms during the relevant period.  See AT 659 (February 2020 medical note that plaintiff presented with anxiety and "has anxiety at times").  The ALJ was not required to perform the special psychiatric review technique under these circumstances, but merely found that plaintiff had no determinable mental impairments.  AT 14-15.

Moreover, while the RFC does not include mental limitations, the ALJ's hypothetical to the VE concerned "unskilled sedentary jobs."  AT 56.  Unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Plaintiff, who worked as a cashier until 2020 and allegedly stopped working due to physical symptoms, has not pointed to evidence showing that she could not perform unskilled work due to mental limitations.  Based on the foregoing, the court concludes that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence, and she has not shown harmful error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  July 17, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/hunter1646.dib.ckd

11